UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GUENG-HO KIM AND JAE KIM : <br>     Plaintiffs, : <br> : <br> v. : <br> : <br> STATE FARM FIRE AND CASUALTY : <br> COMPANY : <br>     Defendant. : | CIVIL ACTION NO. <br> 3:15-cv-879 (VLB) <br><br> October 30, 2015 |

**MEMORANDUM OF DECISION GRANTING DEFENDANT STATE FARM CASUALTY COMPANY'S MOTION TO DISMISS [Dkt. #17]**

    Plaintiffs Gueng-Ho Kim and Jae Kim bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and claims under CUTPA , through CUIPA, against Defendant State Farm Fire and Casualty Company ("State Farm"). For the reasons that follow, State Farm's Motion to Dismiss Counts II and III of the Complaint is GRANTED.

**I.**     **Background**

    In July 2004, Plaintiffs purchased a residence located at 121 Windshire Drive, South Windsor, Connecticut. [Dkt. #1, Compl. at ¶ 4]. The home was built in 1984. [*Id.*]. In late June of 2014, a prospective buyer of the home noticed a series of horizontal and vertical cracks throughout the basement walls. [*Id.* at ¶ 8]. Upon learning of this, Plaintiffs hired a local engineer, who determined that the basement walls suffered from "pattern cracking" due to a chemical compound contained in a particular brand of concrete used in the late 1980's and early 1990's. [*Id.* at ¶ 10]. Plaintiffs contend that this cracking is irreversible, and that it is "only a question of time until the basement walls . . . will fall in due to the

1


exterior pressure from the surrounding soil." [*Id.* at ¶ 14]. When this occurs, the entire home will fall into the basement. [*Id.* at ¶ 15].

At the time of the purchase, and at all times thereafter, Plaintiffs held a homeowners insurance policy issued by Defendant State Farm. [*Id.* at ¶ 5]. The policy was automatically renewed by State Farm each year. [*Id.* at ¶ 6]. On or about July 7, 2014, Plaintiffs submitted to State Farm a claim for coverage. [*Id.* at ¶ 24].[1] Plaintiffs have attached to their Complaint the relevant policy, covering the period of 2013-14 (the "Policy"). *See* [Dkt. #1-1, Ex. A to Compl.].

The Policy defines an "occurrence" as "an accident, including exposure to conditions, which results in . . . property damage during the policy period." [*Id.* at 2, ¶ 7]. "[P]roperty damage" is defined as "physical damage to or destruction of tangible property, including loss of use of th[e] property." [*Id.* at ¶ 8]. Section I of the Policy contains a list of exclusions of coverage for damage to the insured "dwelling." *See* [*id.* at 9]. In this section, the Policy explains that State Farm does "not insure for any loss . . . which consists of, or is directly and immediately caused by . . . freezing, thawing, pressure, or weight of water or ice . . . wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown . . . settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs, or ceilings . . . regardless of whether the loss occurs suddenly or gradually, [or] involves isolated or widespread damage . . . ." [*Id.* at ¶¶ 1, 1.c.,g.l.]. The Policy further excludes losses caused "directly or

---

[1] Although the Complaint states that the claim was submitted on or about "July 7, 2015," given that the Complaint was filed on June 9, 2015, and it was State Farm's denial of the claim which prompted this suit, the Court assumes for purposes of this motion that the claim was submitted on July 7, 2014. [Dkt. #1, Compl. at ¶¶ 18, 24].

2

indirectly" by defect, weakness, inadequacy, fault or unsoundness in . . . planning, zoning, development, surveying, siting . . . design, specifications, workmanship, construction, grading, [and] compaction."  [*Id.* at 10-11, ¶¶ 3, 3.b.(1)-(2)].  Finally, the Policy imposes a duty on the insured to "give immediate notice" after a loss, and provides that it "applies only to loss . . . which occurs during the period this policy is in effect."  [*Id.* at 13, ¶ 2.a., 19, ¶ 1].

On March 16, 2015, State Farm sent Plaintiffs a letter denying their claim.  *See* [Dkt. #1-2, Ex. B].  The letter began by quoting several sections of the Policy.  *See* [*id.* at 1-10].  The letter then gave six reasons for the denial of the claim.  First, the letter stated that, "upon State Farm's investigation, it has confirmed that you are seeking coverage for settling, cracking, bulging or expansion of the foundation and/or walls of the Premises."  [*Id.* at 10].  It then paraphrased several exclusions which were quoted earlier to support State Farm's contention that such losses are "expressly exclude[d]" from coverage.  [*Id.* at 11].  Second, the letter informed Plaintiff that the damage "arose from inherent defects in the concrete and not the result of an extraneous or external cause," and the Policy does not cover losses "caused by wear and tear, latent defect or breakdown, and settling and resultant cracking."  [*Id.*].  Third, the letter stated that the losses themselves consisted of or were "directly and immediately caused by wear, tear, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown," all conditions which were expressly excluded under the Policy.  [*Id.*].  Fourth, State Farm contended that the damage claim accrued "prior to the inception of coverage with State Farm," and thus, the damage was not covered.

3

[*Id.*]. State Farm reached this conclusion by pointing to testimony from one of the Plaintiffs, who allegedly stated that he "was aware of the cracking . . . prior to the purchase of the Premises" and thus, "outside the policy period." [*Id.*].[2] Fifth, and relatedly, State Farm asserted that Plaintiffs had failed to satisfy their duty to "give immediate notice to State Farm" regarding the loss. [*Id.*]. Finally, State Farm quoted language from two earlier policies, which held that any "action must be started within one year after the date of loss or damage." [*Id.* at 11-12]. State Farm further explained that "[t]he referenced policies contain other provisions for limiting or precluding coverage which may become implicated for reasons not now foreseen or because of the discovery of information not currently known to State Farm," and State Farm expressly "reserve[]d the right to supplement or amend the basis for its decision regarding coverage." [*Id.* at 12].

II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the

---

[2] The letter does not identify the proceeding or context in which "Mr. Kim testified, under oath." [Dkt. #1-2, Ex. B at 12].

4

line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

III.    Analysis

A.     Count II Fails to State a Claim

State Farm moves to dismiss Count II of the Complaint, which brings a claim for breach of the covenant of good faith and fair dealing, because the allegations in the Complaint, which include the Policy and denial letter State Farm sent Plaintiffs, do not adequately allege that the Defendant acted in bad faith. [Dkt. #5, Def.'s Memo. of Law in Supp. of Mot. to Dismiss at 5].  The Court agrees.

"The implied covenant of good faith and fair dealing has been applied . . . in a variety of contractual relationships, including . . . insurance contracts." *Verrastro v. Middlesex Ins. Co.,* 207 Conn. 179, 190, 540 A.2d 693, 699 (Conn. 1988) (citations and quotations omitted).  "The concept of good faith and fair dealing is . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." *Id.*  To set

5

forth a claim for breach of the implied duty of good faith and fair dealing, Plaintiffs must plead that: (1) they and the Defendant were parties to a contract under which they reasonably expected to receive certain benefits; (2) that the Defendant engaged in conduct that injured the Plaintiffs' right to receive some or all of those benefits; and (3) that when committing the injurious acts, the Defendant was acting in bad faith.  *Jazlowiecki v. Nationwide Ins. Co. of Am.*, No. CV 126036618S, 2014 WL 279600, at *2 (Conn. Super. Ct. Jan. 3, 2014); *see also De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382, 388 (Conn. 2004) ("To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right . . . must have been taken in bad faith.") (citations and quotations omitted).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive . . . Bad faith means more than mere negligence; it involves a dishonest purpose."  *De La Concha*, 269 Conn. at 433, 849 A.2d at 388 (quoting *Habetz v. Condon*, 224 Conn. 231, 237, 618 A.2d 501 (Conn. 1992)).

In support of their claim, Plaintiffs allege that "State Farm intentionally cited policy exclusions wholly inapplicable to the Kims' claim for coverage" with the intent "to mislead the Kims and convince them that the damage suffered to their home was not covered."  [Dkt. #1, Compl. at ¶¶ 26-27].  Plaintiffs' claim fails for at least two reasons.

First, the provisions of the Policy cited by the Defendants in the denial letter to support their denial of coverage are not "wholly inapplicable," as Plaintiffs contend. [*Id.* at ¶ 25]. To the contrary, the letter quoted and applied language from several sections of the Policy which appears to be directly applicable to the Plaintiffs' claim for "pattern cracking" in their basement walls due to a chemical compound in the concrete used to construct them. [Dkt. #1, Compl. at ¶¶ 10-11]. The cited provisions include: (i) exclusions as to "wear, tear, marring, scratching, *deterioration, inherent vice, latent defect* or mechanical breakdown . . . settling, *cracking*, shrinking, bulging, or expansion of pavements, patios, *foundation, walls, floors*, roofs, or ceilings," (emphasis added) [Dkt. #1-1, Ex. A to Compl. at 9, ¶¶ 1, 1 g., l. (emphasis added)]; (ii) exclusions of losses caused "directly or indirectly" by *defect*, weakness, inadequacy, fault or unsoundness in . . . planning, zoning, development, surveying, siting . . . *design, specifications, workmanship, construction*, grading, [and] compaction," (emphasis added) [*id.* at 10-11, ¶¶ 3, 3.b.(1)-(2) (emphasis added)]; (iii) non-coverage for failure to comply with the Policy's notice requirement, [*id.* at 13, ¶ 2.a.]; and (iv) non-coverage for losses that occurred outside the stated time period of the Policy. [*Id.* at 19, ¶ 1].

Not only did the letter quote these provisions, but it specifically explained why State Farm believed that they were applicable to Plaintiffs' claim. *See* [Dkt. #1-2, Ex. B at 10-12]. State Farm explained that the type, cause, and timing of the damage precluded coverage under the Policy. [*Id.* at 10-11]. It also contended that Plaintiffs failed to comply with their duty to timely notify State Farm and file

7

their claim. [*Id.* at 11-12]. The explanations provided in the letter are facially plausible, in light of the terms of the Policy, and the Complaint offers no explanation or support for Plaintiffs' contention otherwise. Moreover, while the letter also quoted other portions of the Policy without applying them to Plaintiffs' claim, this does not, in itself, mean that such provisions are inapplicable. Indeed, some of the portions quoted and not relied upon in the letter would appear to be directly relevant to Plaintiffs' claim. *Compare* [Dkt. #1-2, Ex. B at 2 (quoting language stating that the Policy covers only the "entire collapse of a building or any part of a building" and that "[c]ollapse means actually fallen down or fallen into pieces. It does not include settling, *cracking*, shrinking, bulging, expansion sagging or bowing"); 4 (quoting language stating that losses "*directly or indirectly cause[d]*" by "*material used in construction*" are not covered) (emphasis added)] *with* [Dkt. #1, Compl. at ¶¶ 10-11, 14-15 (stating that basement walls are presently suffering from "pattern cracking" due to "*a chemical compound*" present in concrete used to build them and alleging that it "is only a question of time" when the walls "will fall into the basement") (emphasis added)]. In the letter, State Farm expressly stated that, in providing its six bases for denial, State Farm was not limiting itself to these grounds, and instead, "reserve[]d the right to supplement or amend the basis for its decision regarding coverage." [Dkt. #1-2, Ex. B at 12].

Second, there was nothing misleading about State Farm's letter. The letter quoted and applied several sections of the policy in a clear and straightforward manner, while raising other apparently applicable sections which State Farm

8

might choose to rely upon at a later point.  That Plaintiffs disagree with Defendant's belief that these provisions of the Policy bar coverage does not evince bad faith sufficient to support a breach of the implied duty of good faith and fair dealing, or to otherwise suggest that the Defendant acted in "an arbitrary and unfounded" manner.  [Dkt. #20, Pl.'s Opp. at 5]; *see also Uberti v. Lincoln Nat'l Life Ins. Co.*, 144 F. Supp. 2d 90, 103 (D. Conn. 2001) ("[E]vidence of a mere coverage dispute . . . will not demonstrate a breach of good faith and fair dealing.").  Accordingly, Count II of the Complaint is DISMISSED.

B.   Count III Fails to State a Claim

Count III brings claims under CUTPA, through CUIPA, based on the failure of the Defendant "to effectuate prompt, fair and equitable settlement of the Kims' claim by failing to provide coverage despite the lack of an applicable policy exclusion."  [Dkt. #1 Compl. at ¶ 34].  Plaintiffs further contend that "it is the general business practice of State Farm to wrongfully deny coverage by relying upon inapplicable policy exclusions."  [*Id.* at ¶ 35].  Together, Plaintiffs assert that these allegations make out a claim under § 38a-816(g)(F) of CUIPA through CUTPA.  Plaintiffs are incorrect.

A plaintiff may bring "a private cause of action under CUTPA to enforce alleged CUIPA violations."  *Mead v. Burns*, 199 Conn. 651, 663, 509 A.2d 11, 18 (Conn. 1986).  CUIPA identifies and prohibits a number of "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance."  Conn. Gen. Stat. § 38a-316.  Among these are "[u]nfair claim settlement practices" such as "not attempting in good faith to effectuate prompt,

9

fair and equitable settlements of claims in which liability has become reasonably clear." *Id.* at § 38a-316(6)(F).  In order to bring a claim under this portion of CUIPA, Plaintiffs must allege facts showing "that the unfair settlement practice was committed or performed with such frequency as to indicate a general business practice." *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 182 (D. Conn. 2005).  Moreover, "[u]nder CU[TP]A as under CUIPA, 'isolated instances of unfair insurance settlement practices' are not cognizable." *Craig v. Colonial Penn Ins. Co.*, 335 F. Supp. 2d 296, 308 (D. Conn. 2004) (quoting *Mead*, 199 Conn. at 666).

While Plaintiffs recognize the need to plead a general business practice, they contend that "the issue of the frequency with which the defendants engaged in the insurance practices complained of is a more appropriate area for discovery than pleading" and that "conclusory allegations of [a] 'general business practice'" suffice "for purposes of permitting discovery."  [Dkt. #20 Pls.' Opp. at 8-9].

Plaintiffs are correct that information regarding a company's general business practices is "peculiarly within the possession and control of the [company]," such that they may plead facts on the basis of information and belief.  *Artisa Records LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010).  However, they still must plead enough facts to permit for the reasonable inference that "the unfair insurance practice occurred with enough frequency for it to be deemed a 'general business practice.'"  *Alqamus v. Pac. Specialty Ins. Co.*, No. 3:14-cv-00550 (VAB), 2015 WL 5722722, at *3 (D. Conn. Sept. 29, 2015) (quoting *Bacewicz*

*v. NGM Ins. Co.*, No. 3:08-cv-1530, 2009 WL 1929098, at *2 (D. Conn. Jun. 30, 2009); *see also Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-cv-209 (VLB), 2010 WL 918107, at *7 (D. Conn. Mar. 11, 2010) ("[U]nder the *Iqbal* pleading standard, a mere assertion of general business practice without anything more is insufficient to sustain [plaintiff's] 'CUIPA through CUTPA' claims against [defendants] for violation of Conn. Gen. Stat. § 38a-816(6).").

      Here, Plaintiffs rely on one instance of wrongful conduct, the denial of their claim at issue in this litigation.  They fail to allege any pattern of wrongful conduct, either with respect to their claim or those of others.  *Cf. Guillory v. Allstate Ins. Co.*, 476 F. Supp. 2d 171, 175 (D. Conn. 2007) (pre-*Twombly/Iqbal pro se* complaint alleging multiple instances of delay, including that insurer gave plaintiff "no notice of his hearing" and failed to respond to multiple phone calls from plaintiff); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014) (finding complaint plausibly alleged a general business practice where it alleged that insurer "refused to provide coverage in at least three separate instances involving other homeowners experiencing the same damages caused by the same mechanism and involving policy language identical to that in the [plaintiffs'] policy").

      Equally inapposite are the two Connecticut cases to which Plaintiffs cite.  The first, *Active Ventilation Prods., Inc. v. Prop. & Cas. Ins. Co. of Hartford*, No. CV 085203757, 2009 WL 2506360, (Conn. Super. Ct. Jul. 15, 2009), is distinguishable on its facts.  *Id*. at *1 (finding allegations that plaintiff timely submitted *multiple claims*, "for losses due to [] fire" and for "thefts of equipment,

11

materials, and product discovered in the course of cleanup and salvage operation" and defendant failed to take a position on any of them stated a CUTPA through CUIPA claim). The second case, *Jones v. Standard Fire Ins. Co.*, No. CV 116004270S, 2013 WL 541015 (Conn. Super. Ct. Jan. 11, 2013), while very similar to the present matter, has been distinguished by other courts in this District because it "applied the Connecticut pleading standard, rather than the standard announced in *Iqbal* and *Twombly*, which requires more than the bare conclusory allegations accepted by the state court[] . . . ." *Panciera v. Kemper Independence Ins. Co.*, No. 3:13-cv-1009 (JBA), 2014 WL 1690387, at *5 (D. Conn. Apr. 29, 2014).

Plaintiffs' bare allegation of a general business practice is insufficient to state a claim, and accordingly, Count III of the Complaint is DISMISSED.

## IV.  Conclusion

For the foregoing reasons, Defendant State Farm's Motion to Dismiss is GRANTED. Count I is the sole live count remaining in the Complaint.

IT IS SO ORDERED, ADJUDGED AND DECREED, this 30th day of October 2015, Hartford, Connecticut

                                                        /s/
                                       Vanessa L. Bryant,
                                       United States District Judge