UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GUENG-HO KIM AND JAE KIM | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:15-cv-879 (VLB) |
| | : | |
| STATE FARM FIRE AND CASUALTY | : | June 26, 2017 |
| COMPANY | : | |
|     Defendant. | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT STATE FARM CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Gueng-Ho Kim and Jae Kim ("Plaintiffs") bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and claims under CUTPA , through CUIPA, against Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant"). After Defendant's Motion to Dismiss, the only remaining claim alleges breach of contract. Defendant has moved for summary judgment. [Dkt. 30.] For the reasons that follow, State Farm's Motion for Summary Judgment is GRANTED.

I.    **Background**

The house at 121 Windshire Drive, South Windsor, Connecticut (the "Property") was built in 1985. [Dkt. 32-2 (Deposition of David Grandpre ("Grandpre Dep.") at 78.] Plaintiffs purchased the Property in 2004. [Dkt. 32-2 (Deposition of Gueng-Ho Kim ("G. Kim Dep.") at 12.]

Upon purchasing the Property, Plaintiffs purchased a homeowner's insurance policy through State Farm bearing the policy number 07-BL-5701-1 (the "Policy") and maintained the Policy throughout the relevant time period. [G. Kim Dep. at 41; *see e.g.*, Dkt. 32-8 (Insurance Policy dated 7/23/2005 through

1

7/23/2006); Dkt. 36-6 (Insurance Policy dated 7/23/2013 through 7/23/2014); Dkt. 35 (Memorandum of Law In Opposition to Summary Judgment) at 3 (representing no material difference in the language of the two policies as they relate to this matter).] In the Policy, State Farm deleted a provision titled "SECTION 1 – ADDITIONAL COVERAGES, Collapse." [Dkt. 36-6 at 11 (collapse provision), 36 (deletion of collapse provision)[1].] The deleted provision would have provided additional coverage "for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building" with certain exclusions. *Id*. Consistent with that deletion, State Farm also deleted language excluding coverage for "collapse, except as specifically provided in SECTION 1 – ADDITIONAL COVERAGES, Collapse." *Id*. at 14.

The Policy also excludes coverage for direct physical loss to property which "consists of, or is directly and immediately caused by [certain enumerated perils] regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damages, arises from natural or external forces, or occurs as a result of any combination of these." *Id*. at 14. The excluded causes include, among others: "wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown" and "settling, cracking, shrinking, bulging, or expansion . . . foundation." *Id*. at 14. In addition, the Policy does "not insure . . . for any loss consisting of . . . defect weakness, inadequacy, fault or soundness in: (1) planning, zoning, development, survey, siting; (2) design, specifications,

---

[1] Page citations in this document refer to page numbers provided by the electronic court filing system, as the document's internal pagination is not continuous through different sections of the Policy.

2

workmanship, construction, grading, compaction; (3) material used in construction or repairs; (4) maintenance." *Id*. at 15. In addition, the Policy also provided that any legal action against State Farm "must be started within 18 months after the date of loss or damage." *Id*. at 37.

In addition to purchasing the Policy, when Plaintiffs purchased the Property they hired U.S. Inspect, Inc. to inspect the Property. [Dkt. 36-5 (Inspection Report) at 1.] The July 15, 2004 inspection report revealed foundation damage. The report noted efflorescence in the basement, specifically "evidence of water penetration through the foundation walls." *Id*. The inspection report further advised that efflorescence "is normally remedied by better control of surface water" and would "most likely" be reduced or eliminated by "[p]roper grading of soil around the house and improvements in the roof drainage system." *Id*. Plaintiffs indirectly admitted that they read the inspection report and were aware of the foundation damage caused by efflorescence, asserting that it was their understanding that the sellers of the Property completed the remedial measures to reduce surface water around the foundation suggested in the Inspection Report before Plaintiffs closed sale on the Property. G. Kim Dep. at 25.

Mr. Kim testified he had noticed some cracks in the Property's foundation "from the beginning when [they] bought the house" but upon further reflection clarified that he "didn't check" for cracking at that time and could not recall whether the concrete was cracked in 2004. Given his understanding from the home inspector's report that the Property had "no structural problems," he

attributed any cracks to "normal wear and tear stuff" and "normal type uneven, sort of uneven concrete work." G. Kim Dep. at 46-48. Ms. Kim does not recall the condition of the concrete foundation when Plaintiffs purchased the Property. [Dkt. 36-2 (Deposition of Jae Kim) ("J. Kim Dep.") at 31.] While the copies provided to the Court are unclear, Mr. Grandpre testified that photographs taken as part of the 2004 home inspection show "a map pattern cracking" in the foundation. [Dkt. 32-2 (Deposition of David Grandpre, P.E.) at 88; Dkt. 32-4 at 21 (photograph in question).]

Mr. Kim testified Plaintiffs first discovered a problem with the Property's foundation when they attempted to sell the Property in 2014. G. Kim Dep. at 46. A prospective buyer's real estate agent noticed cracks in the basement wall and notified Plaintiffs, who retained a consulting engineer to examine their basement walls. *Id*. The consulting engineer, William F. Neal, P.E., employed by Residential Engineering Services, LLC, conducted a visual examination of the Property and sent Plaintiffs a letter reporting his findings on July 3, 2014. [Dkt. 32-3 at 1.] The letter stated the Property's "basement is almost fully finished which gave [the engineers] partial visual access to the interior of the foundation." *Id*. The interior and exterior foundation had "numerous spider-web cracks" and "the foundation walls in several locations are bowing inward . . . by as much as 1-1/2 [inches]." *Id*. Mr. Neal also noted "[h]eavy efflorescence . . . in many areas of the basement" which caused water proofing material on part of the interior foundation to "bubble[]." *Id*. Based on those observations, Mr. Neal concluded "the most likely cause of the foundation distress is Alkali-Silica-Reaction (ASR)" which "is a

4

chemical reaction between alkali aggregate and silica in the concrete mix" and "typically causes [the] type of distress [Plaintiffs' Property was experiencing] 15 to 20 years after the foundation is poured." *Id.* Mr. Neal advised that the concrete foundation would continue to deteriorate and the basement walls would continue to bulge inward "until they structurally fail." *Id.* He stated no corrective action short of replacing the basement walls would remedy the structural problem. *Id.*

Plaintiffs filed a request for coverage for property damage due to the state of the Property's foundation on July 7, 2014. [Dkt. 1-2[2] (3/16/2015 Denial of Coverage) at 1.] On January 5, 2015, in response to that request, State Farm dispatched a consultative engineer with Corrosion Probe, Inc. to inspect Plaintiffs' home. [Dkt. 36-8 at (2/4/2015 Structural Inspection & Assessment) at 2.] The engineer noted during the inspection that "the overall foundation wall system appeared stable with no evidence of an imminent collapse of the structure." *Id*. at 9. However, the engineer observed "network cracking in varying degrees" and "[s]ignificant efflorescence" on the interior foundation walls as well as network cracking on the exterior foundation walls. *Id*. at 3-4. The engineer concluded the Property's foundation was deteriorating as a result of an "expansion arising from the original concrete mix constituents and causing cracking with exposure to water." *Id*. at 8. The engineer further concluded the "deterioration most likely existed . . . prior to the purchase by the current owners." *Id*. at 9.

---

[2] The Denial of Coverage letter was attached to Plaintiffs' Complaint and incorporated by reference into the summary judgment briefing. [*See, e.g.*, Dkt. 31 at 8.]

5

Defendants denied Plaintiffs' request for coverage on March 16, 2015, asserting coverage was excluded from Plaintiffs' Policy as "coverage for settling, cracking, bulging or expansion of the foundation and/or walls of the Premises." [Dkt. 1-2 at 10.] The denial also asserted the concrete damage was excluded from coverage because it "arose from inherent defects in the concrete" as well as "inherent vice, latent defect and/or defective and inadequate planning, design, workmanship and/or construction." *Id.* at 10-11. The denial also asserted the concrete's damage, including visible cracking, "was present prior to the purchase of the Premises and outside the policy period," and accordingly ineligible for coverage. *Id.* at 11.

Plaintiffs retained David Grandpre, P.E. to serve as an expert[3] in this matter, and Mr. Grandpre inspected the Property on December 7, 2015. [Dkt. 36-4 (David Grandpre, P.E. Inspection Findings) ("Grandpre Findings") at 2[4].] Mr. Grandpre, like State Farm's consultative engineer, observed "extensive irregular horizontal, vertical, and diagonal cracks in a map pattern" on the Property's basement walls. *Id.* at 4. He also noted certain exposed walls were "bulging inward" and observed efflorescence on the surface of the walls. *Id.* at 4. Mr. Grandpre concluded the concrete deterioration was caused by a chemical

---

[3] Mr. Grandpre's deposition testimony indicates he has been a licensed engineer since 1986 and is certified in structural engineering. [Dkt. 32-2 (Deposition of David Grandpre, P.E.) ("Grandpre Dep.") at 10.] Defendant does not disputes Mr. Grandpre's expertise or his deposition testimony's admissibility; in fact, both parties rely on Mr. Grandpre's deposition testimony in support of their positions. [*See, e.g.,* Dkt. 35 (Memorandum of Law in Opposition to Summary Judgment) at 35; Dkt. 31 (Memorandum of Law in Support of Summary Judgment) at 14.]
[4] Page citations reference the electronic court system numbering, as the document is not itself paginated.

6

reaction with a compound in the concrete, which caused the concrete to expand and crack. *Id*. at 4-5; Grandpre Dep. at 31-33. He opined that the chemical reaction "was likely aided by water initially batched into the concrete, and later by water absorbed by the concrete." Grandpre Findings at 5. He found the concrete walls "substantially structurally impaired due to the concrete deterioration" and asserted that, with time, they would "continue to weaken until they are no longer competent to perform their intended function of supporting the weight of the floors, walls, and roof." Grandpre Findings at 5; Grandpre Dep. at 74-76.

Six months after Mr. Grandpre inspected the Property, on June 16, 2015, Plaintiffs filed their Complaint in the instant action.

## II.  Statement of Law

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). In order to prevail, the moving party must sustain the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these determinations are within the sole province of the jury." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in [her] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.' At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996)). "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla of evidence' supporting [a] claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251).

A court must make the threshold determination of whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Judges are not required "to submit a question to a jury merely because some

evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a *scintilla* of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 251 (citing *Pennsylvania R. Co. v. Chamberlain,* 288 U.S. 333, 343 (1933); *Coughran v. Bigelow,* 164 U.S. 301, 307 (1896)). Indeed, summary judgment should be granted where the evidence is such that it "would require a directed verdict for the moving party." *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 624 (1944).

"A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). A party may also support their assertion by "showing that the materials cited do not establish the absence . . . of a genuine dispute." *Id.* Cited documents must consist of either "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local R. Civ. P. 56(a)3; *see also* Fed. R. Civ. P. 56(c)(4).

The Court need not consider any materials that the parties have failed to cite, but may in its discretion consider other materials in the record. Fed. R. Civ. P. 56(c)(3). If a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact, the Court may grant summary judgment on the basis of the undisputed facts. D. Conn. L. Rule 56(a)(3) (stating that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with [Local] Rule 56(a)(1) or in the Court imposing sanctions, including . . . an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law").

III.  Analysis

Plaintiffs allege State Farm is liable for breach of contract because it failed to cover losses as set forth in the Policy. An insurance policy "is to be interpreted by the same general rules that govern the construction of any written contract." *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 372–73 (2008). Any contract "must be construed to effectuate the intent of the parties, which is determined from the language used and interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Murtha v. City of Hartford*, 303 Conn. 1, 7–8 (2011) (quoting Remillard v. Remillard, 297 Conn. 345, 355 (2010)); *Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*, 300 Conn. 254, 260 (2011) ("In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from

the language employed in the contract, taking into consideration the circumstances of the parties and the transaction.").

Where the language of a contract is unambiguous, a court "must give the contract effect according to its terms." *Harbour Pointe*, 300 Conn. at 260 (quoting *Cantonbury Heights Condominium Ass'n Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734–35 (2005)). A contract is unambiguous when "its language is clear and conveys a definite and precise intent . . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." *Id.* "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.*

Where the language of an insurance policy is ambiguous, such language must be construed against the insurance company that drafted the policy. *See Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801, 806 (1999). However, any ambiguity in a contract "must emanate from the language used by the parties" and "a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself." *Murtha*, 300 Conn. at 9. "The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so . . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." *Harbour Pointe*, 300 Conn. at 261 (quoting *Cantonbury Heights*, 273 Conn. at 735).

State Farm asserts the Policy does not provide coverage for the Property's concrete damage for multiple reasons. First, State Farm notes the Policy does not include the "collapse" provision usually relied upon in cases involving cracked concrete. Second, State Farm asserts concrete damage falls under numerous Policy exclusions including damage from wear and tear, inherent vice, deterioration, latent defect, or mechanical breakdown. Third, State Farm asserts even if Plaintiffs' loss did not fall within Policy exclusions, the Policy only covers accidental direct physical loss, rather than inherent defects like the concrete damage. Fourth, State Farm asserts Plaintiffs are barred from raising this claim by the Policy's 18-month suit limitation provision because they first learned of the cracks in the basement walls in 2004 when they purchased the Property. Finally, Defendant argues the "loss" Plaintiffs have suffered occurred before the Policy period began, when the basement walls began to crack. The Court discusses Defendant's arguments below.

a. <u>There Is No Policy Provision Covering "Collapse"</u>

State Farm appears to have used form insurance coverage language as the basis of the Kims' Policy and deleted portions of that form language in an amendment before executing the Policy. Among deleted provisions are a provision that would have covered "direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building" with certain exclusions. [Dkt. 36-6 at 11 (collapse provision), 36 (deletion of collapse

provision)[5].]  Plaintiffs do not dispute that the collapse provision is deleted from the Policy, or that it is the provision usually relied upon by "Connecticut homeowners faced with the deterioration of their home due to the damage associated with Mottes concrete."  [Dkt. 35 at 9.]  Rather, Plaintiffs assert coverage based on State Farm's deletion of language excluding coverage for "collapse, except as specifically provided in SECTION 1 – ADDITIONAL COVERAGES, Collapse."  *Id.* at 9-10 (citing Dkt. 36-6 at 14).  Plaintiffs assert that because the language excluding coverage for collapse under certain circumstances was deleted, Plaintiffs assert their loss is not excluded and should be covered under the Policy's "all-risk coverage"  *Id.* at 10.

The Court disagrees with Plaintiffs' interpretation of the Policy.  Viewing "[t]he contract . . . in its entirety, with each provision read in light of the other provisions," as the Court must do, it is clear the deleted exclusion was not intended to create a new right of coverage.  *Harbour Pointe*, 300 Conn. at 261.  The deleted exclusion which would have excluded coverage for collapse "except as specifically provided in SECTION 1 – ADDITIONAL COVERAGES, Collapse," must be read in light of the Policy's deletion of coverage for collapse under "SECTION 1 – ADDITIONAL COVERAGES, Collapse."  [Dkt. 36-6 at 11 (collapse provision), 36 (deletion of collapse provision), 14 (deletion of exclusion regarding collapse).]  It is clear the exclusion was deleted because it referenced a provision that was also deleted to ensure consistency within the Policy.  It would

---

[5] Page citations in this document refer to page numbers provided by the electronic court filing system, as the document's internal pagination is not continuous through different sections of the Policy.

impermissibly "torture words to impart ambiguity" to read the Policy's second deletion as reinstating the very right to coverage discussed in the first deletion. *Harbour Pointe*, 300 Conn. at 260. The Court finds no provision covering collapse in the unambiguous language of the Policy and its amendments.

      b. <u>Whether the Policy Covers Plaintiffs' Loss Absent a Collapse Provision</u>

Since there is no express provision covering collapse, the Policy only covers Plaintiffs' loss if it falls within the Policy's base all-risk coverage. The Policy, termed an "all-risk" policy, provides coverage for "accidental direct physical loss to property described in Coverage A, except as provided in SECTION 1 – LOSSES NOT INSURED." [Dkt. 36-6 at 12.] Among the losses enumerated in "SECTION 1 – LOSSES NOT INSURED" are exclusions for "settling, cracking shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings," and "defect, weakness, inadequacy, fault or unsoundness in . . . design, specifications, workmanship, construction, grading, compaction [or] materials used in construction or repair." *Id.* at 14, 16.

Plaintiffs' expert, Mr. Grandpre, testified at his deposition that the concrete used in the Property's foundation was an "impaired product that is going to break down and [is] going to crack and expand and break apart." Grandpre Dep. at 76. The consultative engineer employed by State Farm to inspect the Property likewise found "[s]ignificant efflorescence" on the interior foundation walls as well as network cracking on the exterior foundation walls, which he concluded was a result of an "expansion arising from the original concrete mix constituents and causing cracking with exposure to water." [Dkt. 36-8 at (2/4/2015 Structural

14

Inspection & Assessment) at 3-4, 8.] In addition, Mr. Grandpre, State Farm's consultative engineer, and Mr. Kim all testified that the Property's basement walls were cracked. *E.g.* Grandpre Dep. at 88 (describing a "map pattern of cracking" in the Property's foundation); G. Kim Dep. at 46-48 (stating the Property's foundation was cracked); 2/4/2015 Structural Inspection & Assessment at 3-4 (noting "network cracking in varying degrees" and "[s]ignificant efflorescence"). *Id.* at 3-4. Finally, the foundation had areas of efflorescence as early as 2004 as reflected by the inspection report commissioned by the Kims before they purchased the property. Even if the grading recommended by the home inspector had been done as the Kims say they understood it would, the work would only have remediated the condition which caused the efflorescence, not the deterioration caused by the efflorescence.

Plaintiffs do not assert the Property's foundation was not cracked or that the concrete was not defective. Rather, Plaintiffs assert the deleted exclusion for losses caused by collapse creates a specific coverage for collapse exempting Plaintiffs from the exclusions for cracking and defect. [Dkt. 35 at 9-10.] As explained above, this interpretation is inconsistent with the plain meaning of the terms of the Policy. In light of the evidence presented by both parties that the Property's foundation was cracked and the concrete used was defective, the Court finds Plaintiffs' loss falls within Policy exclusions and summary judgment must be GRANTED in favor of Defendant.[6]

---

[6] Defendant also asserts Plaintiffs' loss falls within a third exclusion for wear and tear. Plaintiffs dispute this, asserting the concrete's deterioration is not "wear and tear" because it is outside the realm of degradation normally expected of basement walls. [Dkt. 35 at 9 n.4.] Both parties also analyze whether an "all-risk"

15

### c. Timeliness of Plaintiffs' Claim

Defendant also raises two timing arguments in support of summary judgment. Defendant first notes a Policy provision limiting the time frame in which a policy holder may bring suit under the Policy to "18 months after the date of loss or damage." Policy at 37. Because the basement walls were cracked as early as 2004 when Plaintiffs purchased the Property, Defendant argues Plaintiffs' suit is untimely. Plaintiffs do not dispute the legality of the suit limitation provision, but assert Defendant is improperly applying it. Plaintiffs assert the 18-month limitation period began to run not when they first noticed the cracked concrete, but when they first discovered its significance on July 3, 2014.

Similarly, Defendant notes a Policy provision limiting coverage to "loss under Section I or bodily injury or property damage under Section II which occurs during the period that this policy is in effect." Policy at 24. Defendant cite Mr. Grandpre's testimony to assert the concrete had impaired structural integrity and was accordingly defective from the time it was poured, predating the policy's effectiveness. Grandpre Dep. at 76 (stating the concrete was an "impaired product that is going to break down and [is] going to crack and expand and break

---

insurance policy, which covers "losses that are caused by fortuitous and extraneous events where there is no express provision excluding coverage," would cover concrete deterioration which was inevitable due to the components of the concrete but which was not known or intended by the policyholders. *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 47 (2d Cir. 2003) (defining "all-risk" coverage); Dkt. 31 at 15 (Defendant's argument that inevitable loss is not "fortuitous"); Dkt. 35 at 15 (Plaintiffs' argument that loss unforeseen to the policyholder is "fortuitous"). Because all-risk coverage is explicitly limited to losses where there is no express provision excluding coverage (*City of Burlington*, 332 F.3d at 47), and because at least two Policy provisions exclude coverage here, the Court need not determine what the parameters would be of an all-risk insurance policy where such exclusions did not exist.

apart" and stating photographs taken in 2004 showed a "map pattern" of cracking). Plaintiffs respond that the Property was not substantially impaired until the concrete was so cracked it no longer formed a solid mass, citing Mr. Grandpre's opinion that walls subject to the chemical reaction present in Plaintiffs' foundation structurally fail roughly fourteen years after the concrete is poured, when they are visibly cracked, bulging, and bowing. Grandpre Findings at 4. Further, Plaintiffs assert a "multiple injury trigger" should apply to this instance of gradual or progressive loss, meaning even though the parties disagree on when the injury in fact occurred, coverage would also be triggered when the injury manifested itself. Plaintiffs cite Mr. Kim's testimony to assert they did not know, and should not have known, of the damage until July 2014, when the Policy was in effect. G. Kim Dep. at 47-48 (stating he did not recall whether cracks were present when the Kims purchased the home, and that he "didn't check" for cracking at that time).

Both timeliness arguments invite the Court to consider when Plaintiffs knew or should have known of their loss. The parties present Mr. Kim's conflicting deposition testimony (G. Kim. Dep. at 47-48 (stating the cracks were present "from the beginning when we bought the house" in 2004, but also stating he does not recall whether cracks were present when the Kims purchased the home, and that he "didn't check" for cracking at that time), Mrs. Kim's memory failure (J. Kim. Dep. at 31 (stating she does not recall the state of the concrete when they purchased the home), and unclear photographs of the Property's foundation from 2004 (Dkt. 32-4 at 21). The Kims' statements that they were either

17

ignorant or unaware of whether there were cracks in the foundation walls caused by efflorescence prior to purchasing the house does not raise a genuine issue of material fact for two reasons.  First, some of the statements are not affirmative statements of fact.  Second, any denial is inconsistent with, and undermined by, the assertion that they understood the sellers were going to correct the condition which caused the efflorescence prior to the closing.  His admission resolves the question of whether Mr. Kim was aware of the efflorescence and cracking it caused prior to purchasing the home.  Despite the denials and equivocations, the overwhelming weight of the Plaintiffs' testimony is that they were aware of the cracking, albeit not the cause, severity or consequences, at the time of purchase.  However, the Court has determined that the Policy would exclude coverage for Plaintiffs' asserted loss even if timely raised.  Summary judgment is accordingly appropriate as to Plaintiff's breach of contract claim.

IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

\_\_\_\_/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  June 26, 2017